**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL E. LAVIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 01 C 8836** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Maria Valdez** |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the

Commissioner of Social Security (the "Commissioner") denying plaintiff Michael E. Lavin's

("Claimant") claim for supplemental security insurance ("SSI") disability benefits under Title

XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* The parties have consented to the

jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

This matter is before the Court on the following motions: (1) Plaintiff's Motion to Alter

Judgment Pursuant to Fed. R. Civ. P. 59(e) [Doc. No. 36]; (2) Defendant's Motion for the Court

to Reconsider Its Order of July 12, 2006 [Doc. No. 38]; and (3) the parties' cross-motions for

summary judgment [Doc. Nos. 23, 24]. For the reasons that follow, the parties' respective

motions for reconsideration are GRANTED; Claimant's motion for summary judgment is

---

[1] Michael J. Astrue is substituted for his predecessor pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure.

1

GRANTED IN PART; and the Commissioner's motion for summary judgment is GRANTED IN PART.

## I. RULE 59(e) MOTIONS

A party may file a motion to alter or amend judgment pursuant to Rule 59(e) to direct a court's attention to newly discovered evidence or a manifest error of law or fact, enabling the court to correct its own errors and thereby avoiding unnecessary appellate issues. *Harrington,* 433 F.3d at 546 (citing *Bordelon v. Chi. Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000)). Rule 59(e) relief is appropriate where a court "has patently misunderstood a party"; "has made a decision outside the adversarial issues presented" by the parties; or "has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). A Rule 59(e) movant must clearly establish one of these grounds before a court can alter or amend the judgment or order in question. *Romo v. Gulf Stream Coach, Inc.,* 250 F.3d 1119, 1122 n.3 (7th Cir. 2001). The rule, however, does not allow a party to undo procedural shortcomings, present new evidence, or advance arguments that could and should have been presented previously to the court. *Bordelon,* 233 F.3d at 529.

On July 12, 2006, this Court denied without prejudice the parties' cross-motions for summary judgment for lack of jurisdiction and remanded the case to the Commissioner to complete the administrative record. Both Claimant and the Commissioner now seek Rule 59(e) relief due to this Court's misapprehension of the procedural history of this case.[2] Through their

---

[2] Claimant's motion was expressly made pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. The Commissioner's motion to reconsider did not specifically cite to any authority, but it was filed within ten days of the date of the July 12, 2006 order and will therefore be considered a Rule 59(e) motion. *See Borrero v. City of Chi.,* 456 F.3d 698, 699 (7th Cir. 2006); *Harrington v. City of Chi.,* 433 F.3d 542, 545-46 (7th Cir. 2006); *Zepter v. Dragisic,* 237

earlier cross-motions for summary judgment, both Claimant and Commissioner laid out similar procedural histories of Claimant's 1999 application for SSI disability benefits. (*See* Pl.'s Mem. Mot. Summ. J. at 1-2; Def.'s Mem. Mot. Summ. J. at 1-2.) In broad strokes, each side agreed – and the administrative record supported – that: (1) the Social Security Administration (the "Agency") denied Claimant's SSI application initially and on reconsideration, making the Administrative Law Judge's ("ALJ") November 2000 denial the final determination of the Commissioner when the Agency's Appeals Council declined to review the ALJ's decision; (2) Claimant timely sought judicial review, but upon a joint stipulation of the parties this case was remanded to the Commissioner for further proceedings; (3) the Appeals Council vacated the November 2000 denial; and (4) the ALJ held an additional hearing in 2003, which thereafter was followed with another ALJ denial in March 2004. (Pl.'s Mem. Mot. Summ. J. at 1-2; Def.'s Mem. Mot. Summ. J. at 1-2; R. at 5-6, 12-25, 58-61, 63-65, 88-119, 253-63, 317-19, 392-408.)

The parties diverged, however, as to the next link in the procedural path of this case. While Claimant remained silent as to what transpired next, (*see* Pl.'s Mem. at 2), the Commissioner offered that "the Appeals Council denied Plaintiff's request for review." (Def.'s Mem. Mot. Summ. J. at 2.) This statement raised questions as to whether Plaintiff requested Appeals Council review and whether the alleged request was timely. However, the Court's review of the supplemental record contained no answer either way. With what appeared to be a material gap in the official record that was probative on the questions of whether and how the ALJ's March 2004 denial became the final determination of the Commissioner, this Court remanded the case for completion of the record.

---

F.R.D. 185, 187 (N.D. Ill. 2006).

The Commissioner now explains that in his earlier motion for summary judgment he "erroneously stated that the Appeals Council had denied review of that decision" as "Plaintiff did not request and the Appeals Council did not review the ALJ's [March 2004] decision on its own," making it "the final Agency decision." (Def.'s Mot. Recons. ¶ 5.) These key concessions by the Commissioner dispense with this Court's prior concerns about possible gaps in the official record and harmonize the Court's understanding of the procedural ripeness of this case with (1) that which was originally implied by Claimant, (*see* Pl.'s Mot. Summ. J. at 2), and (2) what the Claimant now offers through his Rule 59(e) motion. (*See* Pl.'s Rule 59(e) Mot. at 2-4.) Therefore, the parties' Rule 59(e) motions are granted, and the minute entry and memorandum and opinion order of July 12, 2006, [Doc. Nos. 34, 35] are hereby vacated.

## II. CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A. Procedural History

Claimant filed an application for SSI disability benefits on April 22, 1999, alleging disability due to blindness in his right eye, back pain, sinus infections, headaches, and a decreased ability to concentrate. (R. 88-119). After an initial denial in 1999 and a reconsideration denial in 2000, a hearing was held and testimony taken before the ALJ on September 15, 2000. (R. 28-55, 58-64, 77-80.) In the ALJ's November 2000 opinion, she opined that Claimant was not disabled under the final step of the standard five-step sequential evaluation, *see* 20 C.F.R. § 416.920(a)(4), finding him ineligible for SSI disability benefits. Shortly after Claimant sought review in federal court in 2001, the parties jointly stipulated in June 2002 to a remand to have the medical record updated. (R. 317-19.) Consistent with Judge Nolan's remand order, in October 2002 the Appeals Council vacated the November 2000 ALJ

4

denial and remanded the case for further proceedings, including consideration of whether a psychological examination was needed. (R. 320-21.) In March 2003, the Claimant underwent a consultative examination by a mental health professional. (R. 351-57.) With the supplemented medical evidence, the ALJ convened a second hearing in July 2003 and took additional testimony. (R. 392-408.) Mental health concerns were therefore added to Claimant's alleged impairments. (R. 173, 357.) Then in March 2004, the ALJ rendered a second denial, again finding Claimant not disabled at the fifth step of the sequential evaluation. (R. 256-63.) Claimant made no request to review the March 2004 ALJ denial, nor did he file exceptions under 20 C.F.R. § 416.1484(c), and the Appeals Council did not opt to take jurisdiction over this case. (Pl.'s Mem. Rule 59(e) Mot. at 2-3.) Thus, under 20 C.F.R. § 416.1484(a), the ALJ's March 2004 denial became the final Agency decision, which is the subject of the parties' cross-motions for summary judgment.

## B. Background

### 1. Medical Evidence

Claimant alleges lifelong disabilities and applied for SSI disability benefits in April 1999. The medical evidence in the record includes diagnoses from several physicians and one mental health professional. During childhood, Claimant suffered a trauma to his right eye resulting in blindness and the placement of a prosthesis in 1951. (R. 151-52, 160.) Claimant also underwent a nasal polypectomy in the 1980s to address chronic sinusitis. (R. 151.) In March 1994, Jonathan Alexander, M.D. interpreted an MRI taken of Claimant's lumbar spine as showing: (1) generalized degenerative disc disease, mild generalized disc bulges, and mild spondylotic changes from the L2 to L5 disc levels causing a mild degree of generalized spinal stenosis with

5

slightly more severe stenosis at the L4-5 level; (2) mild focal central disc bulge at the L5-S1 level; (3) apparent central and left-sided focal disc bulge or protrusion at the L1-2 level seen only on axial views and not confirmed on sagittal views. (R. 145, 203.) A month later, William Meltzer, M.D. reviewed the MRI, noted changes in Claimant's spinal region that "were significantly greater than present in 1990," and diagnosed Claimant with degenerative disc disease with stenosis at the L4-L5 level, associated with right sciatic radiculopathy. (R. 202.)

Phillip M. Berman, M.D. has treated Claimant since 1990 for complaints of back pain, sinus problems, and headaches. (R. 142, 172-243.) In January 1999, in addition to noting a recurrence in his acute and chronic sinusitis, Dr. Berman noted Claimant was having low back pain going down both legs. (R. 187, 232.) Then in May 1999, Dr. Berman noted Claimant reported a vacation in Florida; observed that his back pain, nasal problems, and allergies continued; and prescribed medications for pain. (R. 179, 236.) In a June 1999 medical questionnaire, Dr. Berman diagnosed Claimant with ataxic gait with an ability to walk 100 feet without an assistive device, chronic sinusitis, hay fever, loss of right eye due to trauma, and sciatica. (R. 142.)

At the Agency's request, May Hashimi, M.D. examined Claimant in September 1999. On September 2, 1999, the Radiology Department of Our Lady of Resurrection Health Care in Chicago administered an X-ray of Claimant's lumbar spine showing diagnosed (1) minimal scoliosis and degenerative changes to the lumbar spine and (2) slight (grade 1) anterior spondylolisthesis of L4 in relation to L5, but noted (3) "no radiographically demonstrable associated spondylosis." (R. 149.) The next day, Dr. Hashimi diagnosed Claimant with (1) right lower extremity pain with numbness and low back pain, consistent with radiculopathy, secondary

6

disc abnormalities in the lumbosacral spine region; (2) advanced chronic sinusitis with history of nasal polyp resection in the past and possible recurrent polyps to be treated; (3) right eye blindness secondary to trauma in childhood with right eye prosthesis in place; and (4) hypotension. (R. 153.) Dr. Hashimi's September 3, 1999, diagnosis, as communicated to the Agency, does not indicate whether the 1999 X-ray or 1994 MRI were factored into Dr. Hashimi's diagnosis. (R. 151-53.) Then on September 17, 1999, E.C. Bone, M.D. a state agency physician, reviewed Claimant's medical evidence, including the X-ray, for a residual functional capacity ("RFC") assessment and concluded Claimant was able to lift 20 pounds on occasion and 10 pounds with frequency, able to sit or stand about 6 hours in a workday, had postural limitations, and "capable of light strength work activity." (R. 155-56, 159.) Then in December 1999, Claimant visited Dr. Berman for treatment of acute sinusitis, pain in the sinus area, and nasal stiffness. (R. 178.)

On January 19, 2000, Dr. Berman saw Claimant in his office and noted localized pain that did not radiate to his legs. (R. 177.) In January 2000, William R. Stiles, M.D., an eye doctor, examined Claimant for the state agency and concluded that his best corrected vision in his remaining eye was 20/25. (R. 160.) Also in January 2000, Paul LaFata, M.D., another state agency physician, reviewed Claimant's medical evidence and reached conclusions similar to Dr. Bone's but noted that Claimant could perform light work with additional restrictions. (R. 165-66, 171.) Months later, on June 7, 2000, Dr. Berman noted Claimant had "severe pain in his back[,] particularly in his lower back, localized, does not radiate to []his legs." (R. 176.) Later that month, on June 28, 2000, Dr. Berman completed an RFC evaluation at the request of Claimant's attorney. (R. 172-75.) According to Dr. Berman, Claimant had depression and

7

anxiety, could lift 20 pounds occasionally, could walk less than one city block, could sit for 10 minutes and stand for 15 minutes maximum, needed unscheduled breaks four times during a work day, needed to sit/stand as needed, was not a malingerer, would likely be absent from work more than three times a month, and was incapable of "low stress" work. (R. 173-75.) Dr. Berman noted positive straight leg raising on the right leg and that right knee reflexes were decreased. (R. 172.) In December 2000, Dr. Berman saw Claimant in connection with his chronic sinusitis and during the exam noted that Claimant's lower back pain "sometimes radiates to his legs," he had difficulty changing position and walking, he had positive bilateral straight leg raising, and he had decreased bilateral knee reflexes. (R. 366.)

In February 2001, Dr. Berman noted Claimant was having extreme trouble with his sinuses and could barely breathe. (R. 367.) Then in March 2001, Dr. Berman performed an annual check-up and noted Claimant's chronic sinusitis, nasal congestion, and lower back pain radiating down his lower extremities, but noted negative straight leg raising. (R. 368.) Over the course of several medical appointments in 2001 through 2003, Dr. Berman again noted Claimant's severe pain in his back going into his legs in April 2001, (R. 369); sinus and back pain in June 2001, (R. 370); difficulty breathing in July 2001, (R. 371); nasal congestion and back pain in November 2001, (R. 372); back pain radiating to both legs in August 2002, (R. 374); low back pain and chronic sinusitis in December 2002, (R. 375); chronic back pain and pain in sinuses in January 2003, (R. 376); an emergency room visit for his severe sinusitis, (R. 377); and chronic congestion in his sinuses and generalized pain, (R. 378).

As for medical evidence of mental impairment, Claimant underwent a consultative psychological examination by Norton B. Knopf, Ph.D., a licensed clinical psychologist, in March

8

2003. (R. 351-57.) Dr. Knopf administered the Wechsler Adult Intelligence Scale, an intelligence test, and the Minnesota Multiphasic Personality Inventory ("MMPI-2"), a personality test. (R. 351.) Claimant achieved a verbal IQ of 79, a performance IQ of 84, and a full-scale IQ of 79 that placed him in the intellectually deficient classification and with a diagnosis of borderline intellectual functioning. (R. 354.) Dr. Knopf noted that Claimant supports himself by various odd jobs. (R. 352.) Interpreting the MMPI-2 scores, Dr. Knopf opined that Claimant either was exaggerating his symptoms or suffers from an anxiety disorder. (R. 357.) Dr. Knopf's primary diagnosis was adjustment disorder with anxiety and her secondary diagnosis was borderline intellectual functioning. (*Id.*) Finally, through a medical source statement on Claimant's mental capacity, Dr. Knopf noted that he had no limitation in his ability to understand, remember, carry out instructions, and respond appropriately to supervisors, coworkers, or work pressures. (R. 358-59.)

## 2. Hearing Testimony

Claimant was born on December 16, 1949. (R. 89.) At the time of the first hearing before the ALJ, he was 50 years old and was 53 at the time of the subsequent hearing (R. 396.) Claimant's educational and employment background is mixed. While in grade school Claimant was in special education and earned a majority of D's and F's throughout high school. (R. 45, 343.) Claimant, however, did complete high school and thereafter attempted at least one year of post-secondary education, but quit due to reading difficulties. (R. 33, 99.) As for his work history, Claimant has never been able to hold a job very long, (R. 33), and admitted that through his "whole life" he has "had very sporadic work," (R. 103.) Claimant alleges he was last employed in sales in 1999. (R. 104.)

9

Through testimony at the hearings, Claimant raised several impairments. At his first hearing, Claimant alleged difficulty with his sinuses including breathing difficulty, congestion, and headaches; reading and writing problems; and daily back, hip, and right leg pain. (R. 34, 37-38, 47.) Claimant also offered that he could lift twenty pounds without hurting his back, walk 200 feet, stand for ten minutes, and only sit for less than one hour at a time. (R. 39-40.) He also testified that he relieved his pain with Advil, stretches, and sleep. (R. 38, 46.) In the course of his past visits with his treating physician regarding his pain, Claimant underwent an MRI in 1994, physical therapy in 1994 or 1995, an X-ray in 1999, and two steroid injections. (R. 35.) Claimant has no health insurance, (R. 37), and did not seek emergency room treatment for any of his impairments in the two years preceding the first hearing, (R. 39). However, by the second hearing, he offered that he sought emergency medical attention for his migraines in 2002. (R. 407.) At the 2003 hearing, Claimant testified that his vision in his remaining eye had worsened, and he often injures himself walking into walls. (R. 397.) Claimant also offered at the supplemental hearing that he experiences tingling leg and calf pain and prolonged sinus headaches that affect his vision, ears, and breathing. (R. 398.) By 2003, Claimant claimed to have taken a pain pill – either samples from his physician or Tylenol – to treat his ongoing leg pain. (R. 397, 402.)

Claimant's testimony offered a glimpse into his typical day. At the 2000 hearing, Claimant testified that he does not cook at home; pays a laundromat to clean his clothes; attends religious services once or twice a month; and limits his cleaning to light vacuuming, dusting and cleaning. (R. 41-43.) But at the 2003 hearing, Claimant offered that his back pain was exacerbated from daily activities such as cleaning, it takes him one to four hours to get out of bed

because of aches and congestion, and his sleep is disrupted due to his impairments. (R. 398, 400-01.) As to his housing situation, Claimant testified at the 2000 hearing that friends help him pay for food and rent, (R. 32, 42), but one of his acquaintances, Neva Abens, offered that by 2003 Claimant's then-current housing was ending as of September 1, 2003, and that "[h]is few friends no longer call or visit," (R. 349). Claimant added at the second hearing he no longer ventures out to purchase takeout but relies on the kindness of a gentleman who brings a pizza to him a few times a week. (R. 404, 406.) Finally, while Claimant has thought of traveling out of state, most of his plans never have come through; his last trip out of state was to Michigan to visit his mother in 1999 prior to her passing. (R. 42-43.)

The only other party called to testify was Susan Entenberg, a vocational expert. (R. 28, 49-54.) The ALJ posed a hypothetical regarding the existence of jobs available to someone of Claimant's age, education, experience, and geographic location considering the following limitations: (1) no more than lifting of twenty pounds occasionally and ten pounds frequently; (2) sitting or standing for six hours during a workday; (3) occasional stooping, crawling, crouching, balancing, and climbing stairs and ramps; (4) never climbing ladders, ropes, or scaffolds; (5) avoidance of heights, hazards, and machinery; and (5) no requirement of binocular vision or good depth perception. (R. 52-53.) Ms. Entenberg opined that such a person could perform thousands of light duty jobs in the Chicago metropolitan area including: cashier (30,000), housekeeping (20,000); and assembly (10,000). (R. 53.) Then the ALJ added the limitation of sitting or standing every 30 to 40 minutes to the hypothetical, which reduced Ms. Entenberg's estimates to: cashier with sit/stand option (4,000); housekeeping (0); and assembly with sit/stand (4,000). (*Id.*) Finally, the ALJ expanded the hypothetical limitations to cover all

11

of Claimant's statements regarding his restrictions and limitations. (*Id.*) In response, Ms. Entenberg offered there would be no jobs such a person could perform. (*Id.*)

## C. Statutory and Regulatory Standards

Under 42 U.S.C. § 405(g), courts review an ALJ's "decision to deny benefits to determine whether it was supported by substantial evidence or is the result of an error of law." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000)). "Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision." *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006) (quoting *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002)). Thus, where an ALJ's factual findings are supported by substantial evidence, courts must affirm the findings, but where the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). Moreover, courts reviewing ALJ decisions must review the administrative record as a whole, *Hayes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005) (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998)), but not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [their] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001, (7th Cir. 2004) (citing *Lopez*, 336 F.3d at 539). That is not to say courts cannot give an ALJ's decision a "commonsensical read[ ]," *Rice*, 384 F.3d at 369 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal citations omitted)), or review the decision to

12

ensure the ALJ has at the very least built "a logical bridge from the evidence to [her] conclusion[s]." *Hayes,* 416 F.3d at 626 (citing *Steele,* 290 F.3d at 941). The ALJ, however, is not required to lay out a "complete written evaluation of every piece of testimony and evidence." *Hayes,* 416 F.3d at 626 (quoting *Diaz v. Chater,* 55 F.3d 300, 308 (7th Cir. 1995)).

## D. Analysis

Claimant asserts that the 2004 ALJ decision is not supported by substantial evidence and is rife with legal errors. (Pl.'s Mem. Mot. Summ. J. at 10-15.) He specifically points to evidentiary and legal reasoning flaws in the ALJ's approach to determining the Plaintiff's RFC as one allowing him to perform light work in a significant number of jobs in the national economy and argues her credibility determinations are legally unsupportable. (*Id.*) The Commissioner, in turn, counters that the RFC conclusion under the 2004 ALJ decision is supported by substantial evidence and applicable law and the ALJ's credibility determination was legally sound. (Def.'s Mem. Mot. Summ. J. at 10-25.) Finally, the Commissioner itemizes a host of potential arguments that Claimant could have raised in his moving papers, but did not, and she argues these issues should be deemed waived. The Court address each set of arguments in turn.

### 1. ALJ's Assessment of Claimant's Residual Functional Capacity

The ALJ's original RFC finding from 2000 remained essentially undisturbed in the 2004 ALJ decision, as the ALJ found "[n]one of the updated medical evidence" supported "a reconsideration or revision of [her] original finding." (R. 259.) Relying primarily on the testimony of non-examining, non-treating agency physicians, the ALJ found that Claimant possessed the physical RFC to perform a "significant range of light work" or work that requires

13

the ability to "lift and carry (or push/pull) up to 10 pounds frequently and 20 pounds occasionally," and to "sit, stand, and walk up to 6 hours each in an eight-hour workday." (R. 19, 21, 22-24, 259, 260, 262.) The ALJ also found that Claimant was unable to perform any work that requires binocular vision, or work requiring ladders, ropes, scaffolds, unprotected heights, or moving and hazardous machinery. (R. 21, 24, 259, 262.) The ALJ also noted Claimant "has occasional limitations performing postural activities such as balancing, stooping, crouching, and crawling." (R. 259, 262; *accord* R. 21, 24.) Through his appeal, Claimant advances five arguments as to flaws in the ALJ's RFC calculus. In response, Commissioner contests each of Claimant's allegations and argues none warrant remand.

First, Claimant contends the ALJ impermissibly rejected the treating physician's medical opinion that Claimant lacked the ability to engage in any amount of light work and erred in relying on the assessments of non-examining, non-treating state agency physicians. This rejection of a treating physician opinion on the subject of RFC, Claimant contends, "lacks specificity" and violates Agency protocols contained in Social Security Regulation ("SSR") 96-2p.[3] (Pl.'s Mem. Summ. J. at 11-12; Pl.'s Reply at 8 (clarifying earlier inadvertent citation to SSR-96-7p).) The Commissioner responds that the ALJ's RFC discussion exceeds the minimum specificity threshold of "some glimpse into her reasoning," *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004), and was made in accordance with SSR 96-2p, the applicable Agency framework on weighing treating physician testimony. (Def.'s Mem. Summ. J. at 12.)

---

[3] Interpretive rules, such as SSR 96-2p, do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel,* 169 F.3d 489, 492 (7th Cir. 1999).

14

Dr. Berman first treated Claimant in 1990, and it is uncontested that he is Claimant's treating physician. (R. 142.) Generally, a treating physician's opinion regarding the nature and severity of a medical condition is entitled to great deference and controlling weight if: (1) it is well supported by medical findings; and (2) not inconsistent with other substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); 20 C.F.R. § 404.1527(d)(2); *accord* SSR 96-2p. However, determinations as to RFC are reserved for the Commissioner, 20 C.F.R. § 404.1527(e)(2), and medical source opinions (including that of a treating physician) are not given any special significance, 20 C.F.R. § 404.1527(e)(3). *See, e.g., Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner."); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant . . . is not entitled to disability benefits because a physician finds the claimant is . . . 'unable to work.' Under the Social Security regulations, the Commissioner is charged with determining the ultimate issue of disability."). Thus, the "specificity" and compliance with SSR 96-2p that Claimant demands here is misplaced in connection to an RFC assessment. Greater specificity from an ALJ is *only* required when she does not grant controlling weight to a treating source opinion in connection to the nature and severity of an impairment, 20 C.F.R. § 404.1527(d)(2)-(6) (noting ALJs must specifically consider length of treatment relationship, frequency of examination, nature and extent of treatment relationship, supportability, consistency, specialization, and other factors when not giving controlling weight to a treating source opinion on the nature and severity of an impairment), not an RFC determination. Similarly, SSR 96-2p, by its own terms, does not appear to apply to RFC discussions by an ALJ; instead it requires an ALJ to make it clear to any

15

subsequent reviewers the weight she gives to the treating source's medical opinion and her reasons for that weight in connection "to medical opinions, i.e., opinions as to the issue(s) of the nature and severity of an individual's impairment(s)." SSR 96-2p ¶ 6. As the ALJ here applied the correct regulatory and interpretive rule standards, summary judgment and remand on the Claimant's first RFC claim are denied.

Second, Claimant contends that the ALJ erred in relying on non-examining, non-treating medical source opinions because these "physicians did not have access to all medical records at the time of their assessments," which Claimant alleges violates SSR 96-6p.[4] (Pl.'s Mem. Summ. J. at 12.) Claimant offers two examples. In his first, Claimant essentially discredits Dr. LaFata, the last state agency physician to render an RFC opinion, for doing so without medical records that came into existence *after* January 25, 2000, the date Dr. LaFata's RFC opinions were rendered. (*Id.*) It should go without saying, but this example turns logic and the laws of physics on their head. Moreover, nothing in SSR 96-6p specially addresses the need to reopen or keep open a non-examining medical source opinion on RFC as new medical records from other sources pour in. In his second example, Claimant claims Dr. Hashimi, another non-examining state agency physician, was not provided with the 1999 X-ray and 1994 MRI for purposes of Dr. Hashimi's RFC opinion. (*Id.*) The Commissioner, however, contends this assertion is not

---

[4] With regard to the assessment of RFC, SSR 96-6p, in part, instructs ALJs to consider and evaluate non-examining medical source opinions as to what a claimant can still do despite her impairments under 20 C.F.R. § 404.1527(f), which, in turn, instructs that factors contained in 20 C.F.R. 404.1527(a) through (e) apply to ALJ consideration on non-examining sources. 20 C.F.R. 404.1527(f) (both as framed prior to August 1, 2006 and after its amendment effective August 1, 2006). However, 20 C.F.R. § 404.1527(e) does not require the ALJ to give "special significance to the source of an opinion" – whether treating, non-treating, or non-examining – on the issue of RFC.

16

supported by the record. (Def.'s Mem. Summ. J. at 17-18.) The record bears out the

Commissioner's version of events: Dr. Hashimi referenced the MRI in her RFC report, (R. 151),

and was carbon copied on the X-ray in question that day before she rendered her RFC opinion,

(R. 149).

A generous construction of Claimant's second RFC argument is that the ALJ erred by

according less weight to his treating physician's opinion on RFC than other medical opinions.

Courts, however, may not re-weigh medical evidence. *Young*, 362 F.3d at 1001 (citing *Lopez,*

336 F.3d at 539.) Claimant essentially concedes that the ALJ did not ignore Dr. Berman but only

assigned Dr. Berman's view on RFC less weight than Claimant would have liked. Although

medical evidence – treating, non-treating, and non-examining alike – is certainly important,

"[t]he determination of RFC · · · is an issue reserved to the [Agency]," and an ALJ need not

consider any medical opinion conclusive. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995)

(noting the Agency need not accept only physicians' opinions on the issue of RFC); *accord*

*McElroy v. Apfel*, No. 97 C 6585, 1999 WL 199617, at \*6 (N.D. Ill. Apr. 12, 1999) ("[A]n ALJ

is not only not constrained to accept physicians' opinions but also has the responsibility of

resolving conflicts in the evidence of record, including conflicts in the medical evidence.").

Thus, the Court cannot conclude that the ALJ's decision to disfavor the evidence submitted by

Dr. Berman regarding RFC stands in conflict with the process laid out under SSR 96-6p or that

the ALJ erred by weighing the non-examining physicians' RFC assessments more heavily than

Dr. Berman's.

The ALJ here has at the very least traced the path – with mention of medical and non-

medical evidence alike – she used to arrive at her RFC assessment. Moreover, the ALJ is not

17

duty bound to offer a "complete written evaluation of every piece of . . . evidence." *Hayes*, 416 F.3d at 626 (quoting *Diaz*, 55 F.3d at 308). A review of the record as a whole shows that while reasonable minds might disagree with the result, some of those reasonable folks could arrive at the ALJ's RFC conclusion based on the record presented. Claimant's request for summary judgment or remand on this front is thereby denied.

Third, Claimant argues that the ALJ erred when she dismissed objective medical evidence – the 1994 MRI and the 1999 X-ray – without explanation. (Pl.'s Mem. Summ. J. at 13.) As to this third argument, the Commissioner does not specifically respond. Nevertheless, even a cursory review the ALJ's opinions disproves Claimant's third contention. The ALJ, in her 2004 denial, specifically incorporated her earlier findings from 2000 into her 2004 decision. (R. 257.) In 2000, the ALJ specifically addressed both the MRI and X-ray. (R. 21.) In short, this third challenge by the Claimant is an insufficient basis for reversal or remand.

Fourth, Claimant alleges that the ALJ erred by impermissibly "play[ing] doctor" by describing the Claimant's "degenerative disc disease, spinal stenosis, and disc bulges" as not severe despite medical evidence to the contrary. (Pl.'s Mem. Summ. J. at 13.) The Commissioner counters that the ALJ expressly found these back impairments to be severe. (Def.'s Mem. Summ. J. at 18-19.) The Court agrees. In her 2000 opinion, which the ALJ incorporated into her 2004 opinion, (R. 257), the ALJ specifically noted that "[t]he medical evidence indicates the claimant has lower back pain syndrome secondary to degenerative disc disease of the spine . . . . These impairments are *severe* within the meaning of the Regulations." (R. 19 (emphasis added); *accord* R. 23, 261.) Claimant's fourth basis for reversal or remand is denied.

Finally, Claimant offers that the ALJ erred in concluding that Claimant's daily activities constituted evidence of his ability to perform light work. (Pl.'s Mem. Summ. J. at 13.) The Commissioner, however, points to the text of the ALJ decision as only showing the ALJ limited her use of the daily activities testimony to show inconsistencies with the degree of work limitation recommended by Claimant's treating physician. (Def.'s Mem. Summ. J. at 20-21.) The Court disagrees with the Commissioner's careful characterization. In her 2000 decision, incorporated in her 2004 decision, (R. 257), the ALJ concludes "[t]he claimant's daily activities are also inconsistent with the restrictions offered by Dr. Berman *and with a finding of disability.*" (R. 21 (emphasis added).) The Seventh Circuit cautions against cursory assessments that fail to note "the difference between a person's being able to engage in sporadic physical activities," such as driving, shopping, and housework, "and [the person's] being able to work eight hours a day five consecutive days of the week." *Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004) (citing *Clifford,* 227 F.3d at 872; *Easter v. Bowen,* 867 F.2d 1128, 1130 (8th Cir. 1989); *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). Moreover, merely listing "daily activities as substantial evidence that [a claimant] does not suffer disabling pain," does "not establish that a person is capable of engaging in substantial physical activity." *Clifford,* 227 F.3d at 872 (citing *Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir. 1993)). Thus, if the ALJ chooses to rely on Claimant's driving habits, church attendance patterns, and/or chores – as she has – she must devote a more nuanced discussion to these activities and elaborate how exactly they are inconsistent "with a finding of disability." Here, remand is warranted to allow the ALJ to enter specific findings. The ALJ's stated reasoning on daily activities falls short of the mark established under *Carradine* and *Clifford.*

19

## 2. ALJ's Credibility Determination

Next, Claimant contends that the ALJ's assessment of Claimant's credibility is inadequately supported and legally erroneous for not following SSR 96-7p. (Pl.'s Mem. Mot. Summ. J. at 14.) Claimant argues that his self-report testimony at the second hearing sustains, in part, deterioration of his medical impairments from 2000 to 2003. (*Id.*) Specifically, Claimant argues that the ALJ's dismissal of Claimant's credibility centers on prong one of seven factors under SSR 96-7p and this over-reliance on the first factor comes at the expense of the other six that SSR 96-7p instructs ALJs to consider. (*Id.* at 15.) In relevant part, SSR 96-7p lists seven kinds of evidence an ALJ must use in conjunction with medical evidence to assess an individual's credibility. The seven factors are as follows:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) as authority).

The Commissioner counters that the medical evidence fails to support deterioration of Claimant's conditions between hearings, (Def.'s Mot. Summ. J. at 21), and that "[s]imply pointing out an omission" in the ALJ's reasoning "does not demonstrate that the ALJ's

20

credibility determination is not supported by substantial evidence," (*id.* at 22). Moreover, the Commissioner points out that the ALJ did address the SSR 96-7p factors elsewhere in her 2000 opinion, which was incorporated into the 2004 opinion. (*Id.*)

The ALJ devotes a significant portion of her RFC calculus in both her 2000 and 2004 decisions to "the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 416.929, and [SSR] 96-7p." (R. 20.) In addition to her consideration of Claimant's daily activities, the frequency and location of his back pain and vision problems, the activities he avoids to not aggravate his symptoms, his use of over-the-counter medications, his treatment history, his strategies he employs to minimize symptoms, and her observations of him on the stand, the ALJ also considered medical source evidence. (R. 20-21.) The ALJ's 2004 opinion reveals that she applied a similarly detailed analysis – consistent with both agency regulations and interpretive rule SSR 96-7p – to the issue of credibility. In the 2004 decision she considered Claimant's social isolation; his reports that his limited vision, sinus pain, and headaches have worsened over time; his then-recent visits to the emergency room for treatment; activities such as bending that aggravate his symptoms; his use of various medicines to treat his symptoms; assistance he receives from neighbors in completing daily activities; and the then-recently generated mental health opinion as to ability to do work-related activities by Dr. Knopf. (R. 259-60.) In the end, the ALJ concluded that Claimant's 2003 self-report testimony was "both evasive and inconsistent . . . with his testimony at the first hearing"; nevertheless, she went on to reduce the range of his RFC, based on the supplemented testimony and records, to "performing no more than simple, unskilled work."

Despite Claimant's assertions, this Court finds that the ALJ's credibility conclusion is supported by substantial evidence and in compliance with SSR 96-7p. Moreover, as ALJs are in "the best position to see and hear the witnesses and assess their forthrightness," their credibility determinations are afforded "special deference" by courts, which are only disturbed "if the claimant can show it was patently wrong." *Jens*, 347 F.3d at 213 (quoting *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000)). Claimant here has not done so. The ALJ's credibility analysis will not be disturbed by this Court. Claimant's request for summary judgment or remand is denied.

### 3. Waiver

In addition to requesting that this Court uphold the ALJ's 2004 denial – which is addressed above by implication – the Commissioner raises several waiver arguments through her motion for summary judgment, citing the Seventh Circuit's decisions in *Schoenfeld v. Apfel,* 237 F.3d 788 (7th Cir. 2001) and *Shramek v. Apfel,* 226 F.3d 809 (7th Cir. 2000) as support. She specifically argues that Claimant has (1) abandoned pre-remand claims challenging the ALJ's findings regarding his mental capacity/intellectual functioning that limits his ability to work, (Def.'s Mem. Summ. J. at 2 n.1, 5 n.3, and 10) and (2) failed to raise new challenges to the ALJ's incorporation of her 2000 opinion into her 2004 opinion, (*id.* at 11 n.5), (3) the ALJ's reliance on SSR 96-7p factors, (*id.* at 23), (4) the ALJ's finding of a mental capacity limitation to perform simple unskilled work, (*id.* at 24), and (5) the ALJ's reliance on the vocational expert's testimony from 2000 in her 2004 opinion, (*id.* at 24-25). This Court also notes that Claimant raises for the first time in his reply an entire subsection devoted to the allegation that (6) the ALJ failed in her duty to develop a full and fair record. (*Id.* at 19-21.)

22

Claimant, in turn, narrowly construes the *Schoenfeld* and *Shramek* decisions as standing

for the proposition that issues not raised before a district court are waived only for purposes of

appeal and that his allegedly waived arguments not appearing in his moving papers can be and

are properly raised in his reply brief. (Pl.'s Reply at 1.) Claimant, however, comes up short for

both counts. First, while Claimant's limited read on the *Schoenfeld* and *Shramek* decisions hold

true, *see Schoenfeld*, 237 F.3d at 793 ("We have long held that '[i]ssues that a claimant fails to

raise before the district court are waived on appeal.'"); *Shramek*, 226 F.3d at 811 (finding failure

to assert an argument before the Agency's Appeals Council not to operate as a waiver, but failure

to an argument before the district court waives it for purposes of appeal) (citations omitted), it

still misses the mark. This Court cannot ignore another universe of cases that are specifically on

point with Claimant's current dilemma: whether waiver is proper for the raising of new issues in

a reply brief. Review of applicable case law demonstrates that courts – both appellate and trial

courts – do not ordinarily consider newly minted arguments raised in reply. *See, e.g., United

States v. LaShay*, 417 F.3d 715, 719 (7th Cir. 2005) ("Typically, arguments first raised in a reply

brief are considered waived.") (citation omitted); *In re Sulfuric Acid Antitrust Litig.*, 230 F.R.D.

527, 533 (N.D. Ill. 2005) (same) (collecting cases); *Williams v. Thresholds, Inc.*, No. 02 C 9101,

2003 WL 22232835, at *4 (N.D. Ill. Sept. 22, 2003) ("It is well settled that arguments not raised

until the reply brief are waived.") (citation omitted). Instead, "[a] reply brief is for replying not

for raising essentially new matters that could have been advanced in the opening brief." *In re

Sulfuric Acid Antitrust Litig.*, 230 F.R.D. at 533 (quoting *Hussein v. Oshkosh Motor Truck Co.*,

816 F.2d 348, 360 (7th Cir. 1987) (Posner, J., concurring)).

In other words, as Claimant notes, this instant matter is not the situation of the claimants in *Schoenfeld* and *Shramek* – where certain arguments were never raised before the District Court – but that of the situation of a claimant who raises new arguments a tad too late. The rationale underscoring this harsh approach is to stem the unfairness encountered by a non-moving party who – absent a surreply – is left without a meaningful opportunity to respond. *See, e.g., Boyer,* 2005 WL 2370232, at *3. As a surreply was neither sought nor granted here, this Court sees no reason to depart from this long established course and hereby grants the Commissioner's motion to deem waiver, but only as to those arguments that Claimant failed to develop in his moving papers.

The question then becomes what, if anything, has Claimant sufficiently developed in his motion for summary judgment or remand. On this front, Claimant argues that most of the alleged lines of argument mentioned above were developed in his original brief. (Pl.'s Reply at 2 (mental impairments and ALJ reliance and incorporation of 2000 decision); 3 (ALJ's finding of mental capacity to perform simple unskilled work); 4 (ALJ's reliance on vocational expert testimony from 2000).)

In her 2004 decision, the ALJ found none of the updated medical evidence – including Dr. Knopf's diagnosis of "adjustment disorder, [and] possible borderline intellectual functioning" – supported a revision of her original RFC finding or a change in her finding that significant number of jobs in the national economy existed. (R. 258-61.) The Commissioner's first waiver argument is that Claimant abandoned a substantial evidence challenge to the ALJ's findings regarding his mental capacity/intellectual functioning that limits his ability to work. (Def.'s Mem. Summ. J. at 2 n.1, 5 n.3, and 10.) Claimant responds that he has timely raised such

24

a challenge but refers back to his argument as to the ALJ's credibility determination in his moving papers. (Pl.'s Reply at 2.) However, Claimant's response misses the nuance of the Commissioner's waiver argument, which is tied to the ALJ's RFC and step five calculus, not her credibility call. Moreover, aside from not seeing a direct attack on this issue in Claimant's moving papers, the Court also finds difficulty in how Claimant would find fault with the ALJ's weight assigned to Knopf's opinion when Claimant here alleges it is harmonized with the only medical source opinion he champions, that of Dr. Berman's. (Pl.'s Reply at 2.) For Claimant's lack of development of an argument in his opening brief, the Commissioner's first waiver argument is granted.

Early on in her 2004 opinion, the ALJ incorporated her prior "findings with respect to the five-step sequential evaluation process . . . ." (R. 257.) The Commissioner contends that by Claimant's failure to challenge this incorporation in his moving papers qualifies as a waiver. (Def.'s Mem. Summ. J. at 11 n.5.) Claimant counters that he raises such a challenge in his moving papers when he argues that the ALJ's 2000 findings lack specificity. (Pl.'s Reply at 2.) Again, there is a subtle, yet significant, difference between the Commissioner's allegation and Claimant's response here. The Commissioner's focus is on the act of incorporation of the prior decision, while Claimant points to his dissatisfaction with a certain line of reasoning appearing first within the 2000 decision and then as part of the 2004 decision. In other words, Claimant appears to suborn the ALJ's reference back and importation. Thus, the Court deems waiver appropriate here.

The Commissioner's third waiver argument alleges that Claimant waived any challenge to the ALJ's reliance on SSR 96-7p factors. (Def.'s Mem. Summ. J. at 23.) Claimant does not

25

address this allegation in his reply. Nevertheless, as Claimant devoted a significant share of his motion for summary judgment to alleging that the ALJ violated SSR 96-7p through her disproportionate attention paid to prong one at the expense of the other requisite six prongs, (Pl.'s Mem. Summ. J. at 14-15), this Court cannot find that standard for waiver met here. Commissioner's third waiver request is denied.

At part of step five in the standard sequential evaluation, the ALJ relied on Claimant's IQ scores and high school transcripts as substantial evidence that Claimant was "limited to performing no more than simple, unskilled work." (R. 260.) The Commissioner alleges that Claimant raised no timely challenge to this link in the ALJ's overall RFC finding either through an insufficient support or error in legal basis argument. (Def.'s Mem. Summ. J. at 24.) In turn, Claimant contends that through his moving papers he has timely raised such a challenge through his construction of Dr. Knopf's diagnosis of adjustment disorder with anxiety as consistent with that of Dr. Berman's mental health opinion of anxiety. (Pl.'s Reply at 3.) Claimant's harmonizing of Dr. Knopf's and Dr. Berman's opinions, however, was offered in the context of his attack on the ALJ's credibility analysis, not his segregated attack on her RFC calculus. Mere mention of one argument under one silo does not necessarily preserve it for another. Claimant's fourth waiver argument is granted.

In the 2004 decision, the ALJ relies on Ms. Entenberg's vocational expert testimony from 2000 for the step five analysis. (R. 261.) Through her motion for summary judgment, Commissioner alleges Claimant waived any challenge to the ALJ reliance on this prior vocational expert testimony. (Def.'s Mem. Summ. J. at 25.) Claimant responds by pointing to his opening brief's background recitation of hearing testimony, including Ms. Entenberg's.

26

(Pl.'s Reply at 4 (citing Pl.'s Mem. Summ. J. at 8).) As a party's arguments are the marriage of applicable law to facts, the Court fails to see how Claimant's neutral fact recitation developed, no less preserved, a legal argument he did not elaborate on in later pages of the same opening pleading. The Commissioner's fifth waiver argument is granted.

Finally, Claimant develops an entire section of his reply brief to arguing that the ALJ failed in her duty to develop a full and fair record by not updating X-ray images of Claimant's back. (Pl.'s Reply at 19-21.) While Claimant is correct in noting that the Seventh Circuit has ruled "it incumbent upon the ALJ to order additional X-rays to ascertain the extent of . . . degeneration . . ." *Smith,* 231 F.3d at 437 (citing 20 C.F.R. § 404.1527(d)(2)), nothing prevented him from raising this argument in his moving papers. Thus, the Court deems this argument waived.

### III. CONCLUSION

For the set forth above, Claimant's Rule 59(e) motion [Doc. No. 36] and Commissioner's motion for reconsideration [Doc. No. 38] are GRANTED. The minute entry and memorandum and opinion order of July 12, 2006 [Doc. Nos. 34, 35] are hereby VACATED.

Moreover, for the reasons explained above, Claimant's motion for summary judgment [Doc. No. 23] is GRANTED in part insofar as it requests a remand and Commissioner's cross-motion for summary judgment [Doc. No. 24] is GRANTED in part insofar as it requests that certain arguments not raised in Claimant's moving papers be deemed waived. All other requests in the cross-motions [Doc. Nos. 23, 24] are DENIED. Accordingly, this case is remanded, pursuant to sentence six of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED.**

Dated:   AUG 2 2 2007

**ENTERED:**

HON. MARIA VALDEZ
United States Magistrate Judge

28